638 So.2d 33 (1994)
Walter Gale STEINHORST, Petitioner,
v.
Harry K. SINGLETARY, etc., Respondent.
No. 82643.
Supreme Court of Florida.
May 26, 1994.
*34 Stephen D. Alexander and Anthony G. Graham of Fried, Frank, Harris, Shriver & Jacobson, Los Angeles, CA, for petitioner.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
Walter Steinhorst, a prisoner under a sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction under article V, sections 3(b)(1) and (9) of the Florida Constitution.
Steinhorst, along with David Goodwin and Charlie Hughes, was indicted for the murders of four people who came upon them as they were unloading marijuana in an isolated area. Steinhorst was convicted of four counts of first-degree murder. The jury recommended and the trial judge imposed sentences of death for three of the murder convictions and a sentence of life imprisonment on the remaining conviction. On appeal, this Court affirmed the convictions and sentences. Steinhorst v. State, 412 So.2d 332 (Fla. 1982). An earlier petition for writ of habeas corpus was denied. Steinhorst v. Wainwright, 477 So.2d 537 (Fla. 1985). His motion for postconviction relief was also denied. Steinhorst v. State, 574 So.2d 1075 (Fla. 1991). Goodwin was also originally sentenced to death, but his sentence was reduced to life imprisonment on appeal.[1] Hughes was convicted of second-degree murder and sentenced to fifteen years in prison.
Steinhorst argues in this petition for habeas corpus that his death sentence is disproportionate and a violation of his due process and equal protection rights when compared with the sentences of Goodwin and Hughes. Steinhorst contends that his sentence should be reduced pursuant to this Court's decision in Scott v. Dugger, 604 So.2d 465 (Fla. 1992).[2] We disagree.
At the outset, Steinhorst's claim is procedurally barred. This is a successive claim because he made this argument in his earlier motion for postconviction relief. Moreover, all newly discovered evidence claims should be brought under Florida Rule of Criminal Procedure 3.850. Richardson v. State, 546 So.2d 1037 (Fla. 1989). Further, the sentences received by Goodwin and Hughes can hardly be characterized as newly discovered because they were imposed in 1981 and 1982. Finally, our decision in Scott was not a jurisprudential upheaval having retroactive effect. Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
*35 Even if there were no procedural bar, Steinhorst could not prevail. His case is distinguishable from Scott in two important respects. First, Scott received relief on the basis of newly discovered evidence because Scott's death sentence was affirmed before his codefendant was sentenced to life in prison. In contrast, this Court affirmed Steinhorst's death sentence after it had reduced Goodwin's sentence to life imprisonment. Therefore, Goodwin's reduced sentence cannot be considered newly discovered evidence as was the codefendant's sentence in Scott. Although Steinhorst's death sentence was affirmed before Hughes was convicted, Hughes was only convicted of second-degree murder, not first-degree murder as was Steinhorst and as were both codefendants in Scott. Therefore, Hughes' sentence is not relevant to a claim of disparate sentencing.
Next, the codefendants in Scott were equally culpable participants. The evidence presented at trial shows that the instant case does not involve equally culpable participants. Steinhorst shot and killed one person when the victims stumbled upon the smuggling operation. Steinhorst and Hughes then left the scene with one dead and three living persons. Witnesses testified that Steinhorst said he had taken care of the other victims.[3] Unlike Steinhorst, Hughes testified on his own behalf at trial and said that Steinhorst was the one who actually shot the victims. Hughes was convicted of second-degree murder after giving this exculpatory testimony. This Court overturned Goodwin's death sentence because he was not present at the time of the killings and the jury had recommended a life sentence. When codefendants are not equally culpable, the death sentence of the more culpable codefendant is not unequal justice when another codefendant receives a life sentence. See Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986).
To support his argument, Steinhorst relies on an affidavit executed by the judge who presided in the trials of Steinhorst and Goodwin. In his affidavit, the trial judge states that he believes both defendants were equally guilty of felony-murder and deserved the same punishment. It is his belief that because Goodwin's sentence was reduced, Steinhorst's sentence is now disproportionate. We cannot agree. In 1978, Steinhorst was sentenced to death on the basis of the evidence presented at trial and on the relative weight of the aggravating and mitigating factors. On appeal, this Court agreed that the trial judge had performed his sentencing function correctly and affirmed the sentence. On the other hand, we disagreed with the death sentence which the trial judge had imposed on Goodwin and held that the evidence did not support such a sentence. We cannot now rely on an ex parte affidavit executed fifteen years after the trial to determine that the sentencing process was defective.
For the foregoing reasons, Steinhorst's petition for writ of habeas corpus is denied.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW and HARDING, JJ., and McDONALD, Senior Justice, concur.
KOGAN, J., concurs in result only.
NOTES
[1] Goodwin v. State, 405 So.2d 170 (Fla. 1981).
[2] In Scott, we held that where codefendants are equally culpable, a life sentence which is imposed on one of the codefendants after the death sentence of another codefendant is affirmed constitutes "newly discovered evidence" for the purpose of postconviction relief. Scott, 604 So.2d at 469.
[3] See Steinhorst, 412 So.2d at 335.